**NEWBURGER, LOEB & CO., INC., as Assignee of Claims of David Buckley and Mary Buckley, Plaintiff,**

**v.**

**Charles GROSS et al., Defendants,**

**Newburger, Loeb & Co., a New York Limited Partnership et al., Additional Defendants on Counterclaims.**

**No. 71 Civ. 685.**

United States District Court, S. D. New York.

Oct. 16, 1973.

Rehearing Denied Nov. 23, 1973.

Finley, Kumble, Underberg, Persky, Roth & Grutman, New York City, for plaintiff; Herbert Roth, New York City, of counsel.

Golden, Wienshienk & Mandel, New York City, for defendants; Philip Mandel, Bernard Rothman, New York City, of counsel.

Richenthal, Abrams & Moss, Hart & Hume, New York City, for defendants on Counterclaim; David Abrams, Charles Acker, New York City, of counsel.

ROBERT J. WARD, District Judge.

There are presently before the Court a motion by defendants for summary judgment dismissing the complaint and for partial summary judgment with regard to certain counterclaims, a motion by plaintiff and additional defendants on the counterclaims to dismiss the counterclaims, a separate motion by additional counterclaim defendant Alex Aixala seeking summary judgment in his favor, and a motion by certain of the additional de-

fendants on the counterclaims for a stay of this action pending arbitration.

Plaintiff as assignee asserts a churning claim arising from transactions in a brokerage account maintained by David Buckley with defendant Gross & Co., a partnership, from 1962 to 1966. Defendant Gross was a general partner and defendant Bleich a limited partner of Gross & Co. throughout that period. Jean Donoghue who has appeared as a defendant and counterclaimant was also a limited partner of Gross & Co. Gross subsequently became a general partner and Bleich and Donoghue limited partners of Newburger, Loeb & Co. ("the Partnership") which was the predecessor in interest of the plaintiff Newburger, Loeb & Co., Inc. ("the Corporation").

A controversy arising in 1970 between the defendants herein and the other members of the Partnership regarding the sale of the Partnership assets and liabilities to the Corporation has become inextricably intertwined with the comparatively simple churning claim. As the facts have been presented, the Partnership was in dire financial straits and threatened with imminent suspension from the New York Stock Exchange and dissolution. The decision of the other partners to sell the assets and liabilities of the firm to a newly-formed corporation which would bring an infusion of new capital was hotly contested by Gross, Bleich, and Donoghue. These three refused to sign the agreement consummating the sale (hereinafter referred to as the Transfer Agreement).

In addition to defending this suit on the ground that there was no churning of the Buckley account, the defendants also assert other defenses and nine counterclaims.

A. *Plaintiff's and Additional Defendants' Motion to Dismiss the Counterclaims*

Plaintiff and all additional defendants on the counterclaims move to dismiss the First through Eighth counterclaims for lack of subject matter jurisdiction and

the Ninth counterclaim for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1) and (6).

■ The First and Second counterclaims which are also raised as defenses to plaintiff's action are compulsory counterclaims, as they are concerned with "the same transaction or occurrence" that is the subject matter of plaintiff's claim. Fed.R.Civ.P. 13(a). They are so closely linked to defenses to the plaintiff's claim that they must be considered "logically related to the claim the opposing party is suing on." C. Wright, Law of Federal Courts 346 (2d Ed. 1970). This conclusion is consistent with the general trend toward expansion of the concept of compulsory counterclaims. *See* United States v. Heyward-Robinson Company, 430 F.2d 1077 (2d Cir. 1970), cert. denied, 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971). The Fourth counterclaim asserts the same allegedly wrongful acts pleaded as defenses; therefore, it, too, is a compulsory counterclaim. As to these claims no independent basis of federal jurisdiction is necessary as they are viewed as ancillary to the claim asserted in the complaint. *Id.* at 1081.

■ The Third, Fifth, Sixth, Seventh, and Eighth counterclaims are not logically related to the plaintiff's cause of action; therefore, they are not compulsory counterclaims. Since there is no independent basis for federal jurisdiction, these counterclaims may be maintained only to the extent that they constitute a set-off; they may not be asserted as a basis for affirmative relief. *Id.* at 1080–1081.

■ The Ninth counterclaim, asserted only by defendant Gross, alleges that the sale of the business of the Partnership and the alleged interference with an employment opportunity offered to Gross constitute a violation of the Sherman Act and the Clayton Act, 15 U.S.C. § 1 et seq. Since there is no special pleading requirement in anti-trust actions, Nagler v. Admiral Corporation, 248 F.2d 319 (2d Cir. 1957), the allegation, skeletal

though it may be, sufficiently states a claim to withstand a motion to dismiss.

**B.** *Additional Defendants' Motion for a Stay Pending Arbitration*

 Certain additional defendants on the counterclaims, former partners of Newburger, Loeb & Co., the Partnership, have moved alternatively for a stay pending arbitration. Although the Court recognizes the validity of the New York Stock Exchange arbitration rules and the provisions of the Partnership Agreement as well as the federal policy in favor of arbitration, it finds that given the combination of circumstances present in this case, retaining and continuing the litigation in this Court will best serve sound judicial administration and further the interests of justice.

A review of the record indicates that the moving counterclaim defendants waited an inordinately long time before bringing this motion. During this period opposing counsel consented to numerous extensions of time for counterclaim defendants to answer or move; and extensive discovery, both formal and informal, in which the moving parties participated has taken place. At no time while this activity, clearly pointing toward a judicial determination, was taking place and not until the bringing of the instant motion did these counterclaim defendants indicate that this action should be referred to arbitration. If this action were now to proceed to arbitration, it undoubtedly would result in another delay. It, therefore, seems clear that arbitration in this case would not serve to produce the speedy settlement of this dispute which is a primary reason for resorting to arbitration. Although these factors standing alone might not constitute a sufficient showing of prejudice to bar a stay, they are sufficient when combined with the fact that not all parties to this litigation are subject to arbitration.

Since this litigation would continue in this Court in any event, it makes little sense to splinter this action with portions going to arbitration and the balance remaining in this Court. Such a solution seems especially ill-advised here, since it appears that the moving parties are not those primarily concerned and the same issues would have to be tried in two different places with the possibility of conflicting decisions.

The aforementioned combination of factors requires the denial of this motion.

**C.** *Additional Defendant Alex Aixala's Motion for Summary Judgment*

 Additional defendant Aixala moves for summary judgment on the ground that he was merely an investor in the Corporation who played no role in any wrongful acts which might have occurred. Defendants' Rule 9(g) statement and affidavits in opposition sufficiently raise issues of fact concerning Aixala's liability for the acts of additional defendant Persky, allegedly Aixala's agent, and with regard to the nature and extent of Aixala's personal involvement in the events leading up to the execution of the Transfer Agreement to defeat a motion for summary judgment. This motion is denied.

**D.** *Defendants' Motion for Summary Judgment*

Defendants have moved for summary judgment dismissing the complaint and in their favor on their counterclaims. They contend that the sale of the Partnership was in violation of N.Y. Partnership Law § 98(1)(b) (McKinney's Consol.Laws, c. 39, 1948) and that it was fraudulent so that the Corporation does not have good title to the Buckley claim which it received from the Partnership; that the Partnership received the assignment of the churning claim in violation of the fiduciary duty owed to Gross, Bleich, and Donoghue; that the assignment was champertous; and that assuming the Buckley account was churned, the Partnership was a joint tortfeasor with Gross & Co. which, therefore, could not take an assignment

of the claim. In addition to asserting these grounds as defenses, defendants also seek affirmative relief on those claims relating to the alleged illegality of the Transfer Agreement and the alleged fraudulent inducement by the Partnership of the assignment of the Buckley claim. Defendants also seek additional relief in their Third, Fifth, Sixth, Seventh and Eighth counterclaims which the Court cannot determine until such time as plaintiff establishes its claim so as to give defendants a right of set-off. See Section A, *supra* at pp. 1367–1368.

The Transfer Agreement in question was actually executed on February 11, 1971, although for reasons which do not concern the Court, it was dated December 30, 1970. Gross had given notice, effective September 30, 1970, of his withdrawal from the Partnership. On December 31, 1970, Bleich and Donoghue gave notices of withdrawal from the Partnership. Under the terms of § 7.-1(a) of the "Restated Articles of Limited Partnership of Newburger, Loeb & Co. As Amended," Gross ceased to be a partner for all purposes as of the effective date of his withdrawal. Bleich and Donoghue, however, retained their status as limited partners for six months from the date of their notices of withdrawal pursuant to § 7.1(b) of the Partnership Articles. As previously stated, none of them were parties to the Transfer Agreement and they stated their opposition to any such sale.

Section 98 of the N.Y. Partnership Law (McKinney 1948) provides that:

(1) A general partner shall have all the rights and powers and be subject to all the restrictions and liabilities of a partner in a partnership without limited partners, except that without the written consent or ratification of the specific act by all the limited partners, a general partner or all of the general partners have no authority to

. . . . .

(b) Do any act which would make it impossible to carry on the ordinary business of the partnership.

It is undisputed that limited partners Bleich and Donoghue did not give their written consent to or thereafter ratify the Transfer Agreement. Plaintiff contends, however, that execution of the Transfer Agreement was not in violation of § 98(1)(b). The Court, however, concludes that execution of the Transfer Agreement without the written consent of the limited partners was in violation of the statute. Even if there were a contrary provision in the Partnership Articles, an issue which the Court need not and does not decide, such a provision would violate § 98(1)(b) and be invalid. This section, by its terms, is absolute and not subject to variation by agreement of the parties. Subsections (f) and (g) of § 98 provide that they may be varied by including such variations from the law in the certificate filed with the State; such a right is not contained in subsections (a) through (e). This leads the Court to conclude that it was not the legislative intent to allow parties to a limited partnership to make variations from subsections (a) through (e). Furthermore, the policy underlying the law is the creation of limited liability for a class of persons who do not take part in the day-to-day management of a business. The law is not intended to divest them of participation in a decision to terminate a business in which they have a financial investment; the terms of the statute, in fact, strongly suggest the contrary.

Plaintiff's contention that it was the financial difficulties of the Partnership rather than the sale to the Corporation which made it impossible to carry on the ordinary business of the Partnership, simply seeks to avoid the real issue. The law makes provision for such a situation; the partners to the Transfer Agreement found such a solution to be economically untenable. They were not, however, empowered to go ahead with

what they viewed as a more reasonable solution to their problem, when it, in effect, made it impossible to carry on the business of the Partnership without the consent of the limited partners. In light of the clear terms of the statute, this Court cannot consider the reasonableness *vel non* of the defendants' refusal to agree to the terms of the Transfer Agreement or the reasonableness of that Agreement. Defendants' right of refusal was absolute.

Although the execution of the Transfer Agreement was wrongful, rescission would be unwarranted within the context of this case. At the time of the execution of the Transfer Agreement, the only interest of Gross, Bleich, and Donoghue in the Partnership was the right to be paid certain sums of money. Damages, therefore, are an adequate remedy. The amount of injury, if any, that these defendants suffered as a result of the wrongful transfer must abide proof at trial.

In view of this determination that the Transfer Agreement violated N.Y. Partnership Law § 98 (McKinney 1948) the Court need not decide if the making of the Agreement breached a fiduciary duty owed by the consenting partners to Gross, Bleich, and Donoghue.

■■■■ Defendants further contend that the assignment by Buckley of his churning claim to the Partnership was wrongfully induced by the defendants' partners and the partnership attorneys in violation of their fiduciary duties to defendants. The Buckley account was in a deficit position as of August 1966. In June 1970, the Partnership commenced an arbitration proceeding against Buckley to recover $289,782, the amount of the deficit. The Partnership had apparently sustained the loss as the "clearing" house on Buckley's account with Gross & Co. In his answer in the arbitration proceeding, Buckley asserted a counterclaim based upon alleged churning of his account. Defendants assert that the settlement agreement with Buckley was manipulated in such a way as to gain

the assignment of the Buckley claim against the three defendants in order to pressure them into going along with the Transfer Agreement. The Partnership is not prohibited as a matter of law from asserting a claim assigned to it by a third party against present or former members of the Partnership on a cause of action arising from those partners' alleged wrongs prior to their joining the Partnership. Partners can bring an equitable action for an accounting against co-partners for their alleged wrongful acts against their fellow partners during the period of partnership. N.Y. Partnership Law § 44 (McKinney 1948). It thus follows that partners have a remedy against co-partners for wrongful acts committed prior to the formation of the partnership. Since an accounting would be inappropriate in such circumstances, the remedy would be an action at law for damages. If partners can bring such an action, there is no reason for prohibiting the Partnership to take an assignment of an action against individual partners if such an assignment is taken in good faith and does not breach the fiduciary duty owed to the partners being sued. The issue thus is that of the good faith of the Partnership and of Persky, the attorney representing it, in negotiations with Buckley. Good faith in this instance is a question of intent and motive. This is an issue which must be decided by the trier of fact after having an opportunity to observe the witnesses. Only where such observation is impossible are depositions an acceptable substitute. Arnstein v. Porter, 154 F.2d 464, 469–470 (2d Cir. 1946); Lorenz v. Watson, 258 F.Supp. 724 (E.D. Pa.1966).

■■■■ Defendants' claim that the assignment of the Buckley claim was champertous is also inappropriate for summary judgment. Although there is some question whether the New York champerty statute, N.Y. Judiciary Law § 489 (McKinney 1968), even applies to an assignment of a cause of action which is part of a settlement of a claim, the Court need not reach this issue at this

time. There is a question of fact whether the Corporation acquired the Buckley claim as an incident of its purchase of the Partnership business, which would not be champertous, or if this claim was acquired in a separate transaction which *might have been* champertous.

■ Defendants further assert that on the facts as presented to the Court, there can be no finding of churning of the Buckley account with Gross & Co. during 1962–66. It is undisputed that there was considerable activity in the Buckley account. A finding of churning, however, requires additionally that the broker exercised control over the account. *E. g.,* Hecht v. Harris, Upham & Co., 283 F.Supp. 417 (N.D. Cal.1968), modified, 430 F.2d 1202 (9th Cir. 1970). Such a finding of control is not dependent on the account being formally labelled discretionary but is based rather on who in fact was making the decisions. *Id.* at 432–433. In other words, the issue of control is a question of fact to be determined upon the circumstances of each case. Two factors to be considered are the sophistication of the investor and whether all or most transactions in the account were made pursuant to the dealer's recommendation. *Id.* These are questions of fact to be resolved at trial, since they turn on the individual circumstances of each broker-customer relationship. Furthermore, the plaintiff has not yet had the opportunity to examine the registered representative of Gross & Co. with whom Buckley dealt, Charles R. Jordan. It is his motives and intent in connection with his handling of the Buckley account which form the nub of this action. These too are questions of fact to be decided at trial. See *supra* pp. 1370–1371.

■ Defendants also contend that even if the Buckley churning claim is valid, the Corporation, as assignee, cannot assert it because its assignor, the Partnership, was a joint tortfeasor with Gross & Co. The Partnership's liability, if any, arises under § 20 of the Security Exchange Act of 1934, 15 U.S.C. § 78t(a). Even assuming *arguendo* that the Partnership was in a position of control over Gross & Co. or Jordan vis-a-vis the Buckley account, the Partnership would still not be liable if it "acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). Good faith, like motive or intent, is an issue of fact. Arnstein v. Porter, 154 F.2d 464, 469–470 (2d Cir. 1946); Lorenz v. Watson, 258 F. Supp. 724 (E.D.Pa.1966). In the instant case, plaintiff has sufficiently presented facts going to the issue of its good faith to withstand a motion for summary judgment on the ground that it is a joint tortfeasor.

■ Defendants' final contention is that the complaint, or at least the major part thereof, is barred by the statute of limitations. Plaintiff's third cause of action is predicated upon 15(c)(1) of the Securities Exchange Act of 1934, 15 U.S.C. § 78o(c)(1) and Rule 15C–1(7) promulgated thereunder. Section 29(b) of the 1934 Act, 15 U.S.C. § 78cc(b) provides that an action to hold void a contract made in violation of § 15(c) must be "brought within one year after the discovery that such sale or purchase involves such violation and within three years after such violation." Since plaintiff's third cause of action seeks damages, the issue is whether this limitation provision is controlling so as to bar this claim. It has been held that a distinction between a tort and contract theory will not be determinative. So long as the activity allegedly engaged in is of the type which § 15(c) seeks to prohibit, § 15(c) applies whether the action is founded in contract or tort. Goldenberg v. Bache & Company, 270 F.2d 675 (5th Cir. 1959). A reading of the limitation provision of § 29(b) to exclude actions for damages places a narrow, strained interpretation on the statute which the courts have not accepted. In Geismar v. Bond & Goodwin, 40 F.Supp. 876 (S.D. N.Y.1941), the Court stated, in uphold-

ing a civil action for damages under § 29(b), that

. . . The 1938 amendment [the limitations provision] to Section 29(b) clearly contemplates that a civil suit against all of the defendants may be brought; it is not to be condemned because it is in form a proviso. I think, too, that the language of the section is sufficient not only for the cause of action for rescission (6th) but also for the companion causes of action for money damages (2d, 3d and 4th). See Deckert v. Independence Corp., 311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 [1940].

*See also,* Maher v. J. R. Williston & Beane, Inc., 280 F.Supp. 133 (S.D.N.Y. 1967). To hold that the self-same provision which created the right, albeit by implication, through the device of a statute of limitations did not apply to bar actions for damages brought after the running of the statute would be, to say the least, anomolous. Plaintiff's cause of action accrued at the latest as of the date of the last transaction in the Buckley account in August, 1966; since this action was not commenced until February 17, 1971, almost four and one-half years later, the third cause of action is barred by § 29(b).

■ Since there is no federal limitations provision applicable to the other alleged securities violation causes of action, the Court must look to the analogous limitation period of the forum state. Campbell v. City of Haverhill, 155 U.S. 610, 15 S.Ct. 217, 39 L.Ed. 280 (1895); Cope v. Anderson, 331 U.S. 461, 463, 67 S.Ct. 1340, 91 L.Ed. 1602 (1947). As the parties agree, this is the New York six-year limitation period for constructive fraud. N.Y. C.P.L.R. § 213:1. Thus, the alleged violations of the securities laws (except the third cause of action) based on transactions from February 17, 1965 to August, 1966, may clearly be maintained, as is conceded by defendants. Furthermore, the C.P.L.R., effective September 1, 1963, contains a transition provision, § 218(b), which al-

lows causes of action accrued but not barred as of the effective date to be governed by any prior limitation provision or that contained in the C.P.L.R., whichever is longer. Under the prior law, C.P.A. § 53, the statute of limitations for constructive fraud was ten years; therefore, those parts of the complaint (except the third cause of action) based on transactions between April, 1962 and September 1, 1963, are also maintainable.

The period about which there remains a real question is that falling between September 1, 1963 and February 17, 1965. Although the parties have argued in terms of whether the alleged churning of the Buckley account constituted one continuing cause of action or separate causes of action accruing at the time of each trade in the account, the Court need not decide this issue at this time.

■ As stated in Janigan v. Taylor, 344 F.2d 781, 784 (1st Cir. 1965),

[*f*]*ederal law has long been established, . . . that where fraud is involved the cause of action is, so-to-speak, automatically concealed, and does not arise until discovery.* Bailey v. Glover, 1875, 21 Wall. 342, 22 L.Ed. 636; Traer v. Clews, 1885, 115 U.S. 528, 6 S.Ct. 155, 29 L.Ed. 467. Bailey v. Glover was said to apply equally to actions "at law" and "in equity" in tolling federal statutes of limitations. 21 Wall. at 349. Holmberg v. Armbrecht, 1946, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743, extended the doctrine to toll a state statute of limitations where the cause of action was federal in origin and equitable. We are in considerable sympathy with Judge Friendly's opinion in Moviecolor Ltd. v. Eastman Kodak Co., 2 Cir., 1961, 288 F.2d 80, 90 A.L.R.2d 252, cert. den., 368 U.S. 821, 82 S.Ct. 39, 7 L.Ed.2d 26, to the effect that the Holmberg decision should be applied to state statutes of limitation where the cause of action is federal in origin and cognizable solely in federal courts,

whether the cause of action be regarded as "legal" or "equitable," concepts which have lost much of their meaning in federal practice. [Emphasis added.]

Thus, whether the Court applies the New York six-year limitation period for constructive fraud or the identical period for actual fraud, these causes of action are held to accrue as of the date when the fraud was discovered or with reasonable diligence could have been discovered. Bailey v. Glover, 21 Wall. 342, 348, 22 L.Ed. 636 (1875). The New York rule that a constructive fraud action accrues on the date of commission is not adopted as federal law along with the time period. Such a result comports with the parallel situation in Holmberg v. Armbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L.Ed. 743 (1946), involving a New York statute of limitations under which fraud did not serve to toll the statute. The Court held that the federal equitable defense of fraud would be applied along with the state limitations period. This result is also consistent with the approach of those portions of the securities acts which have self-contained statutes of limitations, Section 13 of the Securities Act of 1933, 15 U.S.C. § 77m; and §§ 9(e), 18(c), and § 29(b) of the Securities Exchange Act of 1934, 15 U. S.C. §§ 78i(e), 78r(c), 78cc(b), which contain discovery clauses.

■ The "Fourth Cause of Action" is based on alleged common law violations. Since this is a state law claim, the New York statute of limitations including the New York tolling provision applies. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). As New York law holds that the statute of limitations for constructive fraud runs from the commission of the act, Practice Commentaries to C.P. L.R. § C213:9, those portions of this action based on transactions between September 1, 1963 and February 17, 1965 are barred under this theory. Although the series of transactions might be viewed as one continuing cause of action for the purpose of a federal securities law claim, an issue which the Court does not now decide, there is no basis for finding that they would be so viewed under New York law. The New York courts and the legislature in enacting the C.P.L.R. have shown themselves little disposed to extending the continuing treatment doctrine.

Summary judgment dismissing plaintiff's third cause of action and that portion of the fourth cause of action which relates to transactions between September 1, 1963 and February 17, 1965 is granted.

Settle order on notice.

## ON MOTION FOR REARGUMENT

The parties have moved and cross-moved for reargument with regard to portions of the Opinion of this Court dated October 16, 1973. The motions for reargument are granted and the previous opinion of this Court is clarified and corrected as hereinafter set forth.

*Clarification with respect to application of federal tolling provisions (Opinion, October 16, 1973 at pages 17–19).*

As stated in the Opinion at page 1373, "these causes of action are held to accrue as of the date when the fraud was discovered or with reasonable diligence could have been discovered." In connection with the alleged churning claim involved in this case, determination of that date is an issue of fact which is intertwined with proof of the substantive claim. Therefore, any determination as to whether those portions of the first and second causes of action arising between September 1, 1963 and February 17, 1965 are time-barred must abide proof at trial. For that reason, summary judgment must be denied as to the first and second causes of action.

*Correction of dates (Opinion, October 16, 1973 at page 20).*

The Court corrects the dates on page 1373 of the Opinion of October 16, 1973, at line one and lines 12–13, to read "September 1, 1963 and February 17, 1965". Thus, the fourth cause of action based on common law violations may be main-

**1374**

tained for the period from April, 1962 until September 1, 1963 and is time-barred with respect to those transactions occurring between September 1, 1963 and February 17, 1965.

In all other respects the motion and cross-motion for reargument are denied.

Settle order on notice.