Lilian L. KAUFMAN, Howard K. Kaufman, Curtis C. Kaufman, Patricia Hitchcock, Individually and as beneficiary of the Jennings' Trust, Emily Jennings Hollman, Individually, and as beneficiary of the Jennings' Trust, Rev. Elward D. Hollman, Joseph N. Keyser, Esther S. Keyser, and Jean E. Smith, Sarah Hollman Geils, Marion Hitchcock Clark and Patricia Archer Hollman, Contingent Beneficiaries of the Jennings' Trust, Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., a corporation, James Goff, Edith C. Alter, and David E. Alter, Jr., Defendants.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant and Counter-Plaintiff,

v.

Lilian L. KAUFMAN, Howard K. Kaufman, Curtis C. Kaufman, Patricia Hitchcock, Individually and as beneficiary of the Jennings' Trust, Emily Jennings Hollman, Individually, and as beneficiary of the Jennings' Trust, Rev. Elward D. Hollman, Joseph N. Keyser, Esther S. Keyser, and Jean E. Smith, Plaintiffs and Counter-Defendants.

Civ. No. B–76–227.

United States District Court, D. Maryland.

Dec. 22, 1978.

Allin P. Baxter and Jones & Baxter, Washington, D. C., Robert Anthony Jacques, Rockville, Md., for plaintiffs.

E. Michael Bradley and Brown, Wood, Ivey, Mitchell & Petty, New York City, Ronald D. Jacobs and Belli, Weil & Jacobs, Rockville, Md., for Merrill Lynch & James Goff.

Edith C. Alter and David E. Alter, Jr., pro se.

## MEMORANDUM AND ORDER

BLAIR, District Judge.

This is an action by twelve plaintiffs alleging various securities violations as well as several common law claims. The defendants are Edith Alter, an investment adviser; David Alter, her husband; Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch"); and James Goff, an employee of Merrill Lynch.

Pending before the court are a motion by David Alter for summary judgment, a motion by Merrill Lynch and Goff to dismiss or, in the alternative, for summary judgment, and a motion by the plaintiffs for partial summary judgment. On October 6, 1978, a hearing was held on these motions.

### I. *Factual Background*

In 1972, Mrs. Alter registered as an investment adviser with the Securities and Exchange Commission. Subsequently, each of the nine plaintiffs with whom this memorandum is concerned[1] decided to engage Mrs. Alter as an investment adviser and to open accounts at Merrill Lynch. Each plaintiff and Mrs. Alter entered into investment advisory agreements at various times from early 1973 through May, 1974; these agreements remained in force until terminated in late 1975. The plaintiffs became involved with Mrs. Alter primarily through the recommendations of friends and relatives.

Mrs. Alter was on Merrill Lynch's list of approved investment advisers, each of whom had to meet certain criteria to be approved by Merrill Lynch. When Mrs. Alter obtained the plaintiffs as clients, they opened customer accounts at Merrill Lynch. In addition, the plaintiffs executed limited powers of attorney in favor of Mrs. Alter, empowering her to trade in stocks for the plaintiffs' accounts and authorizing Merrill Lynch to follow her instructions. During the relevant periods involved, plaintiffs' accounts were maintained at the Bethesda office of Merrill Lynch. The broker assigned to those accounts was James Goff. Apparently, the plaintiffs' direct contact with Goff was limited. However, Edith Alter was in frequent contact with Goff, often on a daily basis.

There was frequent trading in plaintiffs' accounts. Substantial commissions were paid to Merrill Lynch, and the value of those accounts declined. Plaintiffs then instituted this action on February 13, 1976.

### II. *Claims Presented*

Plaintiffs have filed an amended complaint in this action. By order of this court dated May 31, 1977, that complaint, as modified, is the official complaint in the case. The modified complaint[2] presents nine claims as follows:

1) The first claim alleges that the defendants engaged in fraudulent activity, including making misrepresentations to plain-

---

[1]. Three of the twelve plaintiffs, Sarah Hollman Geils, Marion Hitchcock Clark, and Patricia Archer Hollman, are only involved in the ninth claim, which is not subject to the motions pending before this court. Accordingly, they will not be discussed in the remainder of this memorandum and order.

[2]. The complaint has been modified by a letter from plaintiffs' counsel, incorporated into the court's May 31 order, eliminating the tenth, eleventh, and twelfth claims and naming additional plaintiffs under the ninth claim. See papers No. 86 and No. 93 in the official court file.

tiffs and engaging in excessive trading in plaintiffs' accounts. This claim is based on section 10(b) of the Securities Exchange Act of 1934 ("1934 Act"), 15 U.S.C. § 78j(b), and Rule 10b–5, 17 C.F.R. § 240.10b–5; section 17(a) of the Securities Act of 1933 ("1933 Act"), 15 U.S.C. § 77q(a); and section 206 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–6;

2) The second claim is asserted solely against Merrill Lynch and alleges that it "controlled" the other defendants so that if they violated the 1934 Act then Merrill Lynch is also liable under section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a);

3) The third claim alleges that defendants are liable for violations of various rules of the National Association of Securities Dealers, Inc. ("NASD");

4) The fourth claim alleges that Merrill Lynch allowed Mrs. Alter to act as a broker although she failed to register as such, thereby violating section 15(a) of the 1934 Act, 15 U.S.C. § 78o(a);

5) The fifth claim alleges that defendants are liable for violations of various rules of the New York Stock Exchange ("NYSE");

6) The sixth claim alleges that the defendants are liable for their violations of various rules of the Chicago Board Options Exchange ("CBOE");

7) The seventh claim alleges that defendants breached their common law fiduciary duties owed to the plaintiffs;

8) The eighth claim alleges that defendants committed common law fraud; and

9) The ninth claim alleges fraudulent conduct by Mrs. Alter in the creation and administration of a trust established by Lloyd Jennings, of which trust Mrs. Alter was the trustee.

Only the ninth claim is not the subject of one of the motions pending before the court. The first eight claims seek an unspecified amount of compensatory damages, and the seventh and eighth claims seek $2,000,000 in punitive damages as well.

### III. *Motion For Summary Judgment by David Alter*

Defendant David Alter has moved for summary judgment in his favor on all counts of the complaint. The court will deny his motion.

The primary claim of the plaintiffs is that David Alter is liable to the plaintiffs as an aider and abettor of or co-conspirator in the alleged fraudulent scheme. Since the conspiracy and aid and abet theories are somewhat similar, *see Zabriskie v. Lewis,* 507 F.2d 546, 553–54 (10th Cir. 1974), and since no relevant difference between the two concepts has been shown for the purpose of this motion, they will be treated together by the court.

To impose liability as an aider and abettor, it is necessary to find (1) the existence of an independent wrongful act, (2) knowledge by the aider and abettor of that wrongful act, and (3) substantial assistance in effecting that wrongful act. *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 886 (3d Cir. 1975). In addition, "scienter," an intent to deceive, manipulate, or defraud, must also be shown in a private action for damages under section 10(b) and rule 10b–5. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Mr. Alter has not contested in his motion either the existence of an independent wrongful act or the presence of the requisite scienter on his part; accordingly, the court will not discuss those two requirements.

The burden on Mr. Alter in establishing grounds for a summary judgment in his favor is quite high. A summary judgment will be rendered only if it is shown that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). The Fourth Circuit has made it clear that summary judgment should not be granted unless the evidentiary facts are not in dispute and there can be no reasonable disagreement concerning the inferences or conclusions to be drawn from those facts. *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co.,* 381 F.2d 245, 249 (4th

Cir. 1967). Summary judgment "should be granted only where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." *Stevens v. Howard D. Johnson Co.,* 181 F.2d 390, 394 (4th Cir. 1950). The opposing party "is entitled to all favorable inferences which can be drawn from the evidence" where its inferences conflict with those supporting the legal position of the moving party. *Cram v. Sun Insurance Office, Ltd.,* 375 F.2d 670, 674 (4th Cir. 1967). The moving party carries the burden of demonstrating clearly that there is no genuine issue of fact, and any doubt as to the existence of such an issue should be resolved against him. *Phoenix Savings & Loan, Inc. v. Aetna Casualty & Surety Co., supra* at 249. Thus, the standard to be applied in ruling on this motion is strict, and this is as it should be, for summary judgment is not a substitute for trial.

Mr. Alter, who himself is an investment adviser, contends that the undisputed facts show that he had no knowledge of and did not participate in the alleged fraud. According to the affidavit submitted by Mr. Alter, he and his wife consciously avoided discussing their business with each other. Mr. Alter submits that he had no knowledge of the plaintiffs' financial needs and investment objectives or of the transactions effected in their accounts. He asserts that he had no discussions with the plaintiffs concerning their investments, and denies participating in any way in the management of the plaintiffs' accounts.

However, the court believes that there is sufficient evidence in the record to have created an issue of fact concerning the extent of Mr. Alter's involvement in the alleged fraudulent scheme of his wife. Mr. and Mrs. Alter were both investment advis-ers, and at times operated their businesses out of the same location. In addition, they discussed specific investments with each other. There is evidence that Mrs. Alter told certain of the plaintiffs that she worked closely with her husband. Mr. Alter sent a letter in October, 1975 to his wife's clients, including the plaintiffs, stating that because of serious family problems he had advised his wife to terminate her relationship with her clients and their accounts. The sending of this letter indicates that Mr. Alter had at least enough connection with his wife's business to be aware of the pressures the business placed on her. In addition, there is evidence that the plaintiffs attempted to call Mrs. Alter at times, and that Mr. Alter informed them that his wife was unavailable. The plaintiffs assert that the totality of this evidence shows Mr. Alter's knowledge of the alleged fraud and his participation in the scheme, at least to the extent of attempting to insulate his wife from inquiries by the plaintiffs. While the court is unwilling to go that far, it does believe that there is a genuine factual issue regarding Mr. Alter's knowledge of and participation in his wife's alleged fraudulent scheme, and for that reason Mr. Alter's motion for summary judgment will be denied.

### IV. *Motion for Summary Judgment by Merrill Lynch and Goff*

Defendants Merrill Lynch and Goff have attacked each legal theory supporting plaintiffs' claims, and have moved to dismiss or, in the alternative, for summary judgment in their favor. Each contested legal theory will be discussed below.

### A. *Section 10(b) and Rule 10b–5.*

The plaintiffs' first claim is based in part upon Section 10(b)[3] of the 1934 Act and

---

**3.** Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5[4] promulgated thereunder. There are two primary violations asserted by the plaintiffs in their first claim, (1) excessive trading in the plaintiffs' accounts or "churning" and (2) misrepresentations or material omissions by the defendants. Defendants Merrill Lynch and Goff submit that they cannot be primarily liable for either of these alleged violations.

Churning occurs when a broker, exercising control over the frequency and volume of trading in the customer's account, initiates transactions that are excessive in view of the character of the account. *Carras v. Burns,* 516 F.2d 251, 258 (4th Cir. 1975). It is evidenced by disproportionate turnover, frequent trading, and large brokerage commissions, and is a deceptive device actionable under section 10(b) and Rule 10b–5. *Id.* One of the essential elements of churning is control of the trading in the account in question, and this control may be inferred from the circumstances surrounding the broker-customer relationship. *Id.*

Merrill Lynch and Goff contend that they cannot be primarily liable for churning since Edith Alter alone controlled the plaintiffs' accounts. Mrs. Alter, they submit, had complete control over the investment decisions, and pursuant to the limited power of attorney in favor of Mrs. Alter they merely effected the transactions that she requested.

■ In the absence of a fiduciary relationship, excessive trading in an account in which the transactions are initiated by the customer is insufficient for direct liability under section 10(b) since the element of control is lacking. *Powers v. Francis I. DuPont & Company,* 344 F.Supp. 429, 432 (E.D.Pa.1972); *see Faturik v. Woodmere*

*Securities,* 442 F.Supp. 943, 945 (S.D.N.Y. 1977) (merely effectuating customer's orders insufficient for control). In the typical case, the basic issue in determining the existence of the broker's control over the account is whether the customer had sufficient financial acumen to adequately determine his own best interests and to independently evaluate his broker's suggestions. *Carras,* 516 F.2d at 258–59. In determining the control issue various factors may be considered, such as whether the transactions were made in the dealer's discretion, the extent of the business and investment experience of the customer, and the particular relationship between the dealer and the customer. *Kravitz v. Pressman, Frohlich & Frost, Inc.,* 447 F.Supp. 203, 211 (D.Mass. 1978). The question of control is one of fact to be determined upon consideration of the particular circumstances of each case. *Newburger, Loeb & Co., Inc. v. Gross,* 365 F.Supp. 1364, 1371 (S.D.N.Y.1973), *modified on other grounds,* 563 F.2d 1057 (2d Cir. 1977), *cert. denied,* 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 782 (1978). The typical churning case involves a direct broker-customer relationship; the instant case is made much more difficult by the interposition of an investment adviser between the plaintiffs and Merrill Lynch and Goff. However, these principles still are applicable to the instant case.

■ Applying them, the court concludes that it cannot rule at this stage of the case that the undisputed material facts establish as a matter of law that Merrill Lynch and Goff did not control the plaintiffs' accounts. It has not been sufficiently demonstrated on the record before the court that Merrill Lynch and Goff merely effected transactions for the plaintiffs as the defendants

---

**4.** Rule 10b–5, 17 C.F.R. § 240.10b–5, provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material

fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

contend. There is some indication that they were much more involved than that. Merrill Lynch placed Mrs. Alter on its list of approved investment advisers, and supplied her with forms to be used by her in obtaining new customers and opening new accounts. Merrill Lynch effected the frequent transactions in the plaintiffs' accounts, and thereby derived quite substantial brokerage commissions. There is evidence in the record that Goff was in almost daily contact with Mrs. Alter and often advised her with respect to the timing and advisability of her trades. There is also some evidence that the plaintiffs were unsophisticated investors and relinquished control of their accounts to Mrs. Alter, Goff and Merrill Lynch. In addition, it appears that certain plaintiffs believed Mrs. Alter worked with Merrill Lynch, and that they were relying to a certain extent on the reputation of Merrill Lynch. The court cannot say as a matter of law that the mere execution of a limited power of attorney in favor of Mrs. Alter relieves Goff and Merrill Lynch of all their responsibilities to the plaintiffs. *See Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38, 45 n.10 (2d Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 642, 58 L.Ed.2d —— (1978). Factual questions exist concerning the sophistication of the plaintiffs as investors and the extent of the defendants' involvement in the management of the plaintiffs' accounts. These questions of fact should be resolved at trial, and therefore summary judgment is inappropriate. *Newburger, Loeb & Co., supra,* 365 F.Supp. at 1371.

■ Defendants Merrill Lynch and Goff contend also that summary judgment should be granted in their favor on the plaintiffs' claims that Merrill Lynch and Goff are liable under section 10(b) and Rule 10b–5 for misrepresentations or material omissions by the defendants. They assert that they made no such actionable misrepresentations. In light of the court's decision above that it will not grant summary judgment for the defendants on the plaintiffs' Rule 10b–5 claim, it is not necessary to discuss this corollary argument of Merrill Lynch and Goff in great detail. Summary

judgment is also inappropriate on this issue because there are important factual questions to be decided at trial, including the investment experience of the plaintiffs, the extent of involvement of Merrill Lynch and Goff with Mrs. Alter and the plaintiffs, and the duties and responsibilities to the plaintiffs assumed by Merrill Lynch and Goff. These issues are material to the determination of whether the defendants' failure to disclose certain information was fraudulent or deceitful under Rule 10b–5.

### B. *Aid and Abet Liability.*

Merrill Lynch and Goff also have moved for summary judgment on the plaintiffs' claim that they are liable for aiding and abetting securities violations committed by Mrs. Alter. Summary judgment will not be granted for Merrill Lynch and Goff on this claim.

As discussed above, the elements of an aiding and abetting claim are (1) the existence of an independent wrongful act, (2) knowledge by the aider and abettor of that wrongful act, and (3) substantial assistance in effecting that wrongful act. *Rochez Brothers, Inc. v. Rhoades,* 527 F.2d 880, 886 (3d Cir. 1975). Scienter must also be shown. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

■ Merrill Lynch and Goff contend first that as a matter of law no underlying actionable wrong of Mrs. Alter can be shown. The court rejects this contention. Even though Mrs. Alter apparently received a fixed fee for her services and not a commission, the court does not agree that the alleged unsuitable and excessive trading by her in the plaintiffs' accounts as a matter of law could never amount to an actionable securities violation. In addition, there are sufficient factual issues concerning Mrs. Alter's activities that it would not be proper to rule at this point that she committed no actionable wrong.

■ Merrill Lynch and Goff also argue that they did not know of and participate in

effecting any securities violations of Mrs. Alter. The plaintiffs' basic theory is that Merrill Lynch and Goff knew of the securities violations, and, contrary to duties they owed to the plaintiffs, recklessly failed to protect the plaintiffs' assets against Mrs. Alter's fraud. The failure to act alleged by the plaintiffs may be sufficient for aid and abet liability in certain circumstances. For example, inaction, particularly when combined with some affirmative action, may be enough (1) where the plaintiff is able to show that the silence of the aider and abettor was consciously intended to aid the violation, *Rochez Brothers, Inc., supra,* 527 F.2d at 889; *SEC v. Coffey,* 493 F.2d 1304, 1317 (6th Cir. 1974), *cert. denied,* 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed.2d 837 (1975); (2) where the aider and abettor knew of, or, but for a breach of duty of inquiry, should have known of the fraud, and possessing such knowledge failed to act due to an improper motive, *Hochfelder v. Midwest Stock Exchange,* 503 F.2d 364, 374 (7th Cir.), *cert. denied,* 419 U.S. 875, 95 S.Ct. 137, 42 L.Ed.2d 114 (1974); *Faturik v. Woodmere Securities, Inc.,* 442 F.Supp. 943, 945 (S.D.N.Y.1977); or (3) where the aider and abettor fails to disclose a known fraud in breach of a duty to disclose, *Hochfelder, supra,* 503 F.2d at 374; *Stern v. American Bankshares Corp.,* 429 F.Supp. 818, 826 (E.D.Wis.1977).

Defendants submit that the plaintiffs' theory is unfounded on the facts of this case. They contend that Merrill Lynch and Goff did not assume any fiduciary responsibilities; rather, they contend that they did nothing more than execute unsolicited orders and that their duty to the plaintiffs was limited to faithful order execution. Defendants argue that under these circumstances there was no fiduciary relationship between the plaintiffs and Merrill Lynch and Goff, citing *Robinson v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 337 F.Supp. 107, 111 (N.D.Ala.1971), *aff'd per curiam,* 453 F.2d 417 (5 Cir. 1972); *see Carras, supra,* 516 F.2d at 257.

■ The court is not convinced by defendants' argument for several reasons.

One circuit has found that a broker owed a fiduciary duty to his customer despite the presence of an investment adviser. *Rolf, supra,* 570 F.2d at 45. More importantly, while it may be true that the only duty of a broker who merely undertakes to execute unsolicited orders is to faithfully execute those orders, Goff and Merrill Lynch may have been significantly involved in these transactions beyond mere execution of orders. As discussed above, there is evidence in the record that Merrill Lynch placed Mrs. Alter on their approved list of investment advisers, that Goff gave Mrs. Alter a substantial amount of advice, and that certain of the plaintiffs believed Mrs. Alter worked closely with Merrill Lynch. The fiduciary nature of a broker-customer relationship is a factual issue. *Fey v. Walston & Co., Inc.,* 493 F.2d 1036, 1049 (7th Cir. 1974). Whether Merrill Lynch and Goff owed fiduciary duties to the plaintiffs is a question which should be left for trial since factual issues exist concerning material points, including the degree of sophistication of the plaintiffs, the extent of the reliance of the plaintiffs on Merrill Lynch and Goff, and the degree of involvement of Merrill Lynch and Goff with Mrs. Alter and the plaintiffs' accounts.

The defendants also cite *Wessel v. Buhler,* 437 F.2d 279, 283 (9th Cir. 1971) for the proposition that liability under Rule 10b–5 cannot be imposed on anyone whose conduct consists solely of inaction. *Wessel* involved a quite different factual situation, and it is most likely inapplicable in the situation where the broker owes fiduciary duties to his customer. As discussed above, there is a factual issue involved as to the duties owed by Merrill Lynch and Goff. In addition, there is evidence in the record suggesting that their involvement with Mrs. Alter and the plaintiffs' accounts went significantly beyond mere inaction.

■ Finally, Merrill Lynch and Goff contend that liability cannot be imposed upon them under section 10(b) since the element of scienter required by *Ernst and Ernst* has not been satisfied in the instant case. They submit that the plaintiffs are arguing only

that Goff and Merrill Lynch acted recklessly, and that recklessness does not fulfill the scienter requirement. This contention is not accepted. The court is not satisfied that the plaintiffs are claiming only reckless behavior on the defendants' part or that the plaintiffs will not be able to meet the higher standard for scienter suggested by Merrill Lynch and Goff. In addition, the court is in agreement with those courts which have ruled that a showing of recklessness is sufficient to fulfill the scienter requirement for a Rule 10b–5 action. *Coleco Industries, Inc. v. Berman,* 567 F.2d 569, 574 (3d Cir. 1977), *cert. denied,* —— U.S. ——, 99 S.Ct. 106, 58 L.Ed.2d 124 (1978); *Sanders v. John Nuveen & Co., Inc.,* 554 F.2d 790, 792–93 (7th Cir. 1977); *Sundstrand Corp. v. Sun Chemical Corp.,* 553 F.2d 1033, 1039–40, 1044–45 (7th Cir.), *cert. denied,* 434 U.S. 875, 98 S.Ct. 225, 54 L.Ed.2d 155 (1977); *see Rolf, supra,* 570 F.2d at 44–47 (recklessness sufficient at least where a fiduciary duty is owed to the defrauded party.) Merrill Lynch and Goff have failed to establish as a matter of law that they did not act recklessly; accordingly, their motion for summary judgment on the ground that the requisite scienter cannot be established is denied.

## C. *Section 17(a).*

Plaintiffs' first claim is based in part on section 17(a) of the 1933 Act, 15 U.S.C. § 77q(a).[5] Merrill Lynch and Goff have moved for summary judgment with respect to this legal theory of the plaintiffs. The court denies this motion.

■ Merrill Lynch and Goff first contend that a private cause of action is not available under section 17(a). This contention is without merit. The law in this circuit is

that section 17(a) does support a private action. *Newman v. Prior,* 518 F.2d 97, 99 (4th Cir. 1975).

■ Merrill Lynch and Goff also argue that the scienter requirement for actions brought under rule 10b–5 is equally applicable to plaintiffs' claims brought under section 17(a) of the 1933 Act, and that the plaintiffs are unable to satisfy this requirement. Even if scienter is required for actions brought under section 17(a), the court rejects this contention for the reasons mentioned above in its discussion of the scienter requirement for the aid and abet claim.

## D. *Section 206 of the Investment Advisers Act of 1940.*

The first claim also alleges that Goff and Merrill Lynch violated section 206 of the Investment Advisers Act of 1940, 15 U.S.C. § 80b–6. Section 206 is an anti-fraud provision and applies only to "investment advisers." Merrill Lynch and Goff contend that they were not investment advisers as defined by section 202(a)(11) of the Investment Advisers Act, 15 U.S.C. § 80b–2(a)(11), which provides in pertinent part:

> (11) "Investment adviser" means any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities . . . but does not include . . . (C) any broker or dealer whose performance of such services is solely incidental to the conduct of his business as a broker or dealer and who receives no special compensation therefor . . . . .

Merrill Lynch and Goff submit that they were not investment advisers within that definition because Goff did not offer any

**5.** Section 17(a) of the 1933 Act provides as follows:

> (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
>
> (1) to employ any device, scheme, or artifice to defraud, or

> (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

investment advice to the plaintiffs, and, if he did, no "special compensation" was received from the plaintiffs or Mrs. Alter. The plaintiffs respond that Goff did provide advice to Mrs. Alter, and that substantial commissions were received from plaintiffs' accounts, which commissions amount to special compensation.

■ It is unclear on the record whether Goff did in fact advise Mrs. Alter. However, even assuming Goff did give investment advice, such advice was incidental to his position as broker for the plaintiffs' accounts. There is no indication that Goff received any fees specifically for his advising Mrs. Alter; rather it appears that the commissions received were for his services in effecting the transactions, not for his rendering of advice. The large amount of brokerage commissions received by Merrill Lynch and Goff does not by itself make them investment advisers. Since there is no evidence that Goff and Merrill Lynch received any special compensation for Goff's giving of advice, the court concludes that their services are encompassed by the exclusion of section 202(a)(11)(C) for services incidental to the conduct of a brokerage business. Since Goff and Merrill Lynch are not investment advisers within the definition of section 202(a)(11), as a matter of law they cannot be held liable under section 206 of the Investment Advisers Act. Accordingly, plaintiffs cannot base their first claim against Merrill Lynch and Goff on section 206, and the motion for summary judgment of Merrill Lynch and Goff on the first claim will be granted to the extent that the claim against them is based on section 206.

### E. Section 20(a).

Plaintiff's second claim is asserted against Merrill Lynch, and is based upon section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), which provides that:

Every person who, directly or indirectly, controls any person liable under any pro-

vision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

Merrill Lynch has moved for summary judgment with respect to this claim on the ground that no one Merrill Lynch controlled violated the 1934 Act. It submits that Goff committed no actionable wrong and that it did not control Mrs. Alter.

■ The court disagrees. As discussed above, the court cannot rule on the record before it that Goff and Mrs. Alter committed no violation of the 1934 Act; indeed, the court has refused to grant the defendants summary judgment on the plaintiffs' Rule 10b–5 claim against Mrs. Alter and Goff. In addition, Merrill Lynch obviously controlled Goff as its employee; it also cannot be said as a matter of law that Merrill Lynch did not "control" Mrs. Alter within the meaning of section 20(a).

The SEC has defined "control" to mean "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of a person . .." 17 C.F.R. § 240.12(b)–2(f). In making the determination of whether one is a "controlling person," heavy consideration is to be given to the power or potential power to influence and control the activities of a person, as opposed to the actual exercise of that power. *Rochez Brothers, Inc., supra,* 527 F.2d at 890–91; *Stern v. American Bankshares Corp.,* 429 F.Supp. 818, 823–24 (E.D.Wis.1977). Section 20(a) only requires some indirect means of discipline or influence short of actual direction to hold a controlling person liable, and the failure of the controlling person to diligently enforce a proper system of internal supervision may be sufficient for liability. *SEC v. First Securities Co.,* 463 F.2d 981, 987 (7th Cir.),

cert. denied, *McKy v. Hochfelder,* 409 U.S. 880, 93 S.Ct. 85, 34 L.Ed.2d 134 (1972). The rationale for holding a broker to a duty to supervise those it controls is that the broker derives financial gain from sales of its representative. *Zweig v. Hearst Corporation,* 521 F.2d 1129, 1135 (9th Cir.), *cert. denied* 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975).

Applying these principles, the court concludes that Merrill Lynch has failed to establish that it did not at least indirectly control Mrs. Alter. Merrill Lynch placed Mrs. Alter on the approved list of investment advisers, and effected her transactions; there is also evidence that Merrill Lynch gave her substantial advice on particular transactions. These factors indicate that Merrill Lynch may have had at least a potential power to influence Mrs. Alter's activities. Since there are some factual questions concerning the nature of the relationship and dealings between Mrs. Alter and Goff and Merrill Lynch, summary judgment for Merrill Lynch on the second claim is improper at this time.

### F.  *Rules of the NASD, NYSE, and CBOE.*

The plaintiffs' third, fifth, and sixth claims are based on alleged violations of the rules of the NASD, NYSE and CBOE respectively. Merrill Lynch and Goff have moved for summary judgment on these claims, contending that violations of those rules do not give rise to implied causes of action under the rules. Their motion will be granted.

One reason that these three claims should be eliminated from the complaint is that plaintiffs' counsel indicated at the October 6, 1978 hearing on these motions that plaintiffs were no longer claiming that violations of these rules were actionable per se and that plaintiffs were no longer pursuing their claims asserted directly under these rules. Instead, the plaintiffs intend to use the alleged rules violations as evidence of the section 10(b) violation asserted under the first claim.

In addition, the rule in this circuit is that no private cause of action is implied for violations of these rules. *Parsons v. Hornblower & Weeks-Hemphill, Noyes,* 447 F.Supp. 482, 494 (M.D.N.C.1977), *aff'd per curiam,* 571 F.2d 203 (4th Cir. 1978), held that no private claim exists for violations of the NASD rules. *Carras, supra,* 516 F.2d at 260–61, approved the district court's decision to treat the alleged violations of the NYSE Rules as not giving rise to a separate cause of action apart from Rule 10b–5. The court believes that the alleged violations of the CBOE rules should be treated similarly to NYSE rule violations. Accordingly, Merrill Lynch's and Goff's motion for summary judgment on the third, fifth, and sixth claims will be granted, since violations of the NASD, NYSE, and CBOE rules do not give rise to a private cause of action separate from a Rule 10b–5 claim.

### G.  *Section 15(a).*

Plaintiff's fourth claim is that Merrill Lynch allowed Mrs. Alter to act as a "broker" although she failed to register as such, thereby violating Section 15(a) of the 1934 Act, 15 U.S.C. § 78*o*(a). Merrill Lynch's motion for summary judgment on this claim will be granted. Plaintiff's counsel indicated at the hearing that plaintiffs were abandoning this claim. In addition, there is no evidence whatsoever that Mrs. Alter at any time acted as a broker as that term is defined in section 3(a)(4) of the 1934 Act, 15 U.S.C. § 78c(a)(4).

### H.  *Common Law Claims.*

Plaintiffs' seventh and eighth claims are for breach of fiduciary duty and fraud, respectively. Merrill Lynch's and Goff's motion for summary judgment on these claims will be denied.

The defendants claim that they cannot be liable for breach of fiduciary duty since the only duty Goff assumed was to faithfully execute orders, which he did. As discussed above, there are factual issues in the case

which are relevant to the determination of the scope of the duties owed by Goff and Merrill Lynch; accordingly the defendants' motion for summary judgment on this claim should be denied.

Merrill Lynch and Goff submit that the fraud claim should be dismissed because Goff and Merrill Lynch made no misrepresentations of fact. However, a concealment of material facts, or the failure to disclose in violation of a duty to disclose, may be sufficient to establish liability for fraud in certain circumstances. *See Fegeas v. Sherrill*, 218 Md. 472, 147 A.2d 223, 225–26 (1958). Merrill Lynch and Goff have not established as a matter of law that plaintiffs cannot show such a concealment or non-disclosure. In addition, there are factual issues concerning Merrill Lynch's and Goff's possible duties to the plaintiffs.

I. *Common Law Defenses.*

Merrill Lynch and Goff have moved to dismiss all the claims asserted under the federal securities laws on the grounds that the plaintiffs' claims are barred by the statute of limitations and the doctrines of estoppel and laches. This motion will be denied.

Plaintiffs' claims under the securities laws are subject to the most appropriate limitations provision contained in the Maryland "blue sky" laws. *Fox v. Kane-Miller Corp.*, 542 F.2d 915, 917–18 (4th Cir. 1976); *Newman v. Prior*, 518 F.2d 97, 100 (4th Cir. 1975). The Maryland blue sky law provides a one year limitations period. *Annotated Code of Maryland*, Corporations and Associations Article, § 11–703(f)(2)(ii). This section is in accord with the controlling federal rule that the limitations period does not begin to run until the fraud is actually known or should have been discovered by the exercise of due diligence. *Fox, supra*, 542 F.2d at 918. This suit was instituted on February 13, 1976. Merrill Lynch and Goff contend this suit is barred by the one year limitations period because the plaintiffs should have known of the alleged churning prior to February, 1975. The defendants argue that the plaintiffs' receipt of confirmation slips and monthly statements from Merrill Lynch prior to February, 1975 put the plaintiffs on notice of any excessive trading in their accounts.

The mere receipt of confirmation slips does not in itself provide sufficient notice of churning activity. *Dzenits v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 494 F.2d 168, 172 (10th Cir. 1974). One important factor to be considered in determining whether the plaintiffs should have known of the alleged fraudulent activity is the degree of their investment sophistication and experience. *Id.* When conflicting inferences can be drawn from the facts, the question of when the fraud should have been discovered must be submitted to the jury. *Newman, supra*, 518 F.2d at 100. Since the degree of investment sophistication of these plaintiffs is unclear on the record, this issue is not one which is appropriate for resolution by summary judgment.

In a somewhat related argument, Merrill Lynch and Goff contend that plaintiffs' claims are also barred by the doctrine of estoppel and laches in that the plaintiffs received the confirmations and monthly statements without ever complaining to Merrill Lynch or Goff about excessive or unsuitable trading. Again summary judgment is not proper on this issue. The questions of estoppel and laches likewise depend in large part upon the knowledge and experience of the plaintiffs. *Hecht v. Harris, Upham & Co.*, 283 F.Supp. 417, 428–29, 434–35 (N.D.Cal.1968), *aff'd in part and modified in part*, 430 F.2d 1202, 1208–09 (9th Cir. 1970). The investment sophistication of the plaintiffs, and their ability to comprehend the monthly transaction statements, are questions for trial.

V. *Plaintiffs' Motion for Partial Summary Judgment.*

The only remaining question is plaintiffs' motion for partial summary

judgment on the issue of churning. This motion is denied. There are substantial factual questions concerning the extent of control exercised by the defendants over the plaintiffs' accounts, the degree of the plaintiffs' experience in the securities market, and the investment objectives of the plaintiffs; accordingly summary judgment on this issue is not proper.

Accordingly, it is this 22nd day of December, 1978 by the United States District Court for the District of Maryland ORDERED:

1) That defendant David Alter's motion for summary judgment is DENIED;

2) That Merrill Lynch's and Goff's motion for summary judgment on the first claim is GRANTED only in so far as plaintiffs base their first claim against Merrill Lynch and Goff on section 206 of the Investment Advisers Act; in all other respects, their motion for summary judgment on the first claim is DENIED;

3) That Merrill Lynch's and Goff's motion for summary judgment on the third, fifth, and sixth claims is GRANTED;

4) That Merrill Lynch's motion for summary judgment on the fourth claim is GRANTED;

5) That Merrill Lynch's and Goff's motion for summary judgment in all other respects is DENIED; and

6) That plaintiffs' motion for partial summary judgment is DENIED.