Gregory DANIEL, M.D., et al., Plaintiffs,

v.

AMERICAN BOARD OF EMERGENCY MEDICINE, et al., Defendants.

No. 90–CV–1086A.

United States District Court,
W.D. New York.

Nov. 19, 1997.

---

Jaeckle, Fleischmann & Mugel (Ralph L. Halpern, of counsel), Buffalo, NY, Shearman & Sterling (James T. Halverson, Kathleen M. Comfrey, of Counsel), New York City, for plaintiffs.

Phillips, Lytle, Hitchcock, Blaine & Huber (Robert E. Glanville, of Counsel), Buffalo, NY, for Defendants American Board of Emergency Medicine, Henry A. Thiede, Frank A. Disney, and Council of Emergency Medicine Residency Directors.

Petree Stockton, LLP (Denise M. Jennings, George L. Little, of Counsel), Winston–Salem, NC, for Defendant Forsyth Memorial Hospital.

Magner, Love & Morris (William J. Love, Jr., of Counsel), Buffalo, NY, for Defendant Johns Hopkins Hospital, Part of the Johns Hopkins Health System.

Collidge, Wall, Womsley & Lombard (Terence L. Fague, of Counsel), Dayton, OH, for Defendant Kettering Medical Center.

Schnader, Harrison, Segal & Lewis (Sam Silver, of Counsel), Philadelphia, PA, for Defendant Mercy Catholic Medical Center, Misericordia Div.

Kohrman, Jackson & Kranz (Donald S. Scherzer, of Counsel), Cleveland, OH, for Defendant Ohio State University Hospitals.

Keck, Mahin & Cate (Philip O'Neil, of Counsel), Washington, DC, for Defendant Riverside Methodist Hospitals.

Hinshaw & Culbertson (Robert E. Nord, of Counsel), Chicago, IL, for Defendant St. Francis Medical Center.

Rushfeldt, Shelley & Drake (Doreen Wener Shefeld, Gail A. Reisman, Jerry R. Sparks, of Counsel), Sherman Oaks, CA, for Defendant Tri–City Medical Center.

Dennis C. Vacco, Atty. Gen., State of N.Y. (Douglas S. Cream, Asst. Atty. Gen., of Counsel), Buffalo, NY, for Defendant State University of New York at Stony Brook Medical Center.

LeBeouf, Lamb, Greene & Macrae (Molly S. Boast, Sara C. Kay, of Counsel), New York City, for Defendants Children's Hospital of Michigan, Children's Hospital and Health Center (San Diego), Detroit Receiving and University Health Center, Loma Linda University Medical Center, Lutheran General Hospital, Medical College of Pennsylvania and Medical College Hospitals, Mercy Hospital and Medical Center, Methodist Hospital of Indiana, Inc., Oregon Health Sciences University Medical Center, St. Anthony Hospital, University of California (Irvine) Medical Center, University of California (Los Angeles) Medical Center, University of California (San Diego) Medical Center, University of Massachusetts Medical Center, University Medical Center, (Tucson), and University of New Mexico, Univesity Medical Center.

Paul A. Crotty, Corporation Counsel, City of New York, Bob Bailey, Assistant Corporation Counsel, City of New York Law Department, New York City, for Defendant Lincoln Medical and Mental Health Center.

Kelley, Drye & Warren (Richard E. Donovan, Lynne M. Glass, of Counsel), New York City, for Defendant Our Lady of Mercy Medical Center.

## ORDER

ARCARA, District Judge.

This case was referred to Magistrate Judge Leslie G. Foschio on April 24, 1991. Defendants moved to dismiss the Second Amended Complaint on statute of limitation grounds and for failure to state a claim. On July 15, 1996, Magistrate Judge Foschio filed a Report and Recommendation, recommending that the Court deny defendants' motions to dismiss.

The following defendants filed objections to Magistrate Judge Foschio's July 15, 1996 Report and Recommendation: Forsythe Memorial Hospital; Lutheran General Hospital; Mercy Hospital and Medical Center; Our Lady of Mercy Medical Center; Riverside Methodist Hospitals; Ohio State University

Hospitals; Council of Emergency Medicine Residency Directors; Mercy Catholic Medical Center–Misericordia Division; and Tri–City Hospital District d/b/a/Tri–City Medical Center.[1] Oral argument on defendants' objections was held on October 17, 1996.

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendations to which objections have been made. Upon a *de novo* review of the Report and Recommendation, and after reviewing the submissions of the parties and hearing argument from counsel, the Court adopts the proposed findings of the Report and Recommendation.

Accordingly, for the reasons stated by Magistrate Judge Foschio in his Report and Recommendation, defendants' motions to dismiss the Second Amended Complaint on statute of limitation grounds and for failure to state a claim are denied. The Court will not consider or grant any motion for reconsideration of this Order. The case is hereby referred back to Magistrate Judge Foschio for further proceedings.

IT IS SO ORDERED.

## REPORT AND RECOMMENDATION

FOSCHIO, United States Magistrate Judge.

### *JURISDICTION*

This matter was referred to the undersigned on April 24, 1991 by the Honorable Richard J. Arcara for report and recommendation. The matter is presently before the court on the American Board of Emergency Medicine, the Council of Emergency Medicine Residency Directors, and the "hospital Defendants' " [1] motions to dismiss the Second Amended Complaint on statute of limitations grounds and for failure to state a claim.[2]

### *BACKGROUND*

Plaintiff, an emergency medicine physician, filed this action on September 25, 1990, following the American Board of Emergency Medicine's ("ABEM") refusal to permit Plaintiff to take its examination as a prerequisite to certification as an ABEM Diplomate. Following removal of this action to federal court on October 23, 1990, Defendants moved for dismissal of the original complaint which asserted causes of action for violations of the due process and equal protection clauses of the Fourteenth Amendment to the Constitution, and for a violation of the New York State Human Rights Law. In response, Plaintiff filed an amended complaint ("the First Amended Complaint") on February 7, 1991, withdrawing the claims for constitutional violations and asserting causes of action under Sections 1 and 2 of the Sherman Act, 15 U.S.C. § 1 *et seq.*, and seeking relief pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. § 12 *et seq.* The First Amended Complaint also added the individual board members of ABEM as defendants.

1. Several defendants sent letters to the Court joining in the objections of the other defendants. These defendants include: Kettering Medical Center; St. Francis Medical Center; Johns Hopkins Hospitals; and Lincoln Medical and Mental Health Center. The Court notes that, in the future, objections should be made by way of a formal filing and not by letter.

1. The "hospital Defendants" include Children's Hospital (San Diego), Children's Hospital of Michigan, Detroit Receiving Hospital and University Health Center, Forsyth Memorial Hospital of North Carolina, the Johns Hopkins Hospital, Part of the Johns Hopkins Health System of Maryland, Kettering Medical Center of Ohio, Lincoln Medical and Mental Health Center of New York, Loma Linda University Medical Center of California, Lutheran General Hospital of Illinois, the Medical College of Pennsylvania and Hospital, Mercy Catholic Medical Center–Misericordia Division of Pennsylvania, Mercy Hospital and Medical Center of Illinois, Methodist Hospital of Indiana, Ohio State University Hospital, Oregon Health Sciences University Hospital, Our Lady of Mercy Medical Center, Riverside Methodist Hospitals of Ohio, Saint Francis Medical Center of Illinois, St. Anthony Hospital of Colorado, Tri–City Medical Center of San Diego, the University of California Medical Centers at Los Angeles, Irvine and San Diego, the University Hospital of the State University of New York at Stony Brook, the University Hospital at the University of New Mexico School of Medicine, the University of Massachusetts Medical Center, and the University Medical Center at Tucson, Arizona.

2. A Report and Recommendation discussing Defendants' motions to dismiss on jurisdictional grounds was issued on January 16, 1996; objections are currently pending before Judge Arcara.

Defendants filed a motion to dismiss the First Amended Complaint on April 5, 1991. This motion was granted as against all of the individual ABEM board members, except Henry A. Thiede, M.D., for lack of personal jurisdiction. *Daniel v. American Board of Emergency Medicine,* 802 F.Supp. 912 (W.D.N.Y.1992). Thereafter, on July 16, 1993, Plaintiff filed a motion to amend the complaint to add parties. This request was granted, and, as to the additional Plaintiffs, the Second Amended Complaint was deemed to relate back to the date of the filing of the First Amended Complaint on February 7, 1991. However, Defendants' rights to move against the second Amended Complaint were fully preserved. Decision and Order, dated January 12, 1994, at p. 13 n. 1.

On January 13, 1994, the Second Amended Complaint was filed, adding one hundred and seventy-five additional Plaintiffs, all individual physicians who allege to have similar claims, and thirty Defendants, including the Council of Emergency Medicine Residency Directors ("CORD") and twenty-eight teaching hospitals whom Plaintiffs allege are co-conspirators with Defendant ABEM. Specifically, in the Second Amended Complaint, Plaintiffs allege that ABEM conspired with CORD and the hospital Defendants to unreasonably restrict competition between ABEM certified and non-certified emergency physicians, including Plaintiffs, by eliminating ABEM's prior alternative qualification for eligibility to sit for ABEM's certification examination on the basis of years of practice in the field of emergency medicine (referred to as the "practice-track"), under which Plaintiffs may have been eligible to sit for and successfully pass the examination thereby requiring ABEM's certification. Plaintiffs allege that ABEM and the hospital Defendants perpetuated this restraint through a conspiracy involving various professional organizations in the field of emergency medicine, including CORD, as a result of the activities of various physicians whom had achieved ABEM certification under the "practice-track" and were either employed or affiliated with the hospital Defendants' residency programs in emergency medicine. Familiarity with the prior proceedings and orders of this court is presumed.

Defendants subsequently, in March, April, and May of 1994, moved to dismiss or for summary judgment on statute of limitations grounds[3] or for failure to state a claim. Plaintiffs' response to the Defendants' motions to dismiss for failure to state a claim and on statute of limitations grounds were filed on April 8, 1996. Defendants' replies were filed on April 25 through April 29, 1996. A sur-reply was filed by the Plaintiffs, with the court's permission, on May 13, 1996. No oral argument was held on this matter.

Based upon the discussion which follows, the Defendants' motions to dismiss on statute of limitations grounds should be DENIED; Defendants motions to dismiss for failure to state a claim upon which relief can be granted should also be DENIED.[4]

## DISCUSSION

■ On a motion to dismiss, the court looks to the four corners of the complaint and is required to accept a plaintiff's allegations as true and to construe those allegations in the light most favorable to plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Da-*

3. Tri–City Medical Center joined the LeBoeuf Defendants' motion to dismiss on statute of limitations grounds on July 25, 1994. Our Lady of Mercy Medical Center withdrew its motion on the statute of limitations issue. Our Lady of Mercy Medical Center's Reply Memorandum, filed January 30, 1995, at p. 1, n. 1. ABEM asserted statute of limitations as its third affirmative defense in its Answer to the Second Amended Complaint, ABEM's Answer, filed February 28, 1994 at ¶ 137, however, ABEM never pursued this affirmative defense on a motion to dismiss the Second Amended Complaint.

4. Several of the Defendants made motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure; as motions for summary judgment are premature at this time, *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 555 (2d Cir.1977) (motion for summary judgment should not be entertained before discovery has been completed in antitrust cases in which relevant facts are disputed), these motions will be considered as motions to dismiss for failure to state a claim upon which relief can be granted. Discovery was limited to jurisdictional issues only by the Decision and Order filed April 29, 1994.

cey v. New York Lawyers' Association, *423 F.2d 188, 191 (2d Cir.1969), cert. denied, 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970). The complaint will be dismissed only if "it appears beyond doubt" that the plaintiffs can prove no set of facts which would entitle them to relief.* Conley v. Gibson, *355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957);* Gagliardi v. Village of Pawling, *18 F.3d 188, 191 (2d Cir.1994);* Goldman v.. Belden, *754 F.2d 1059, 1065 (2d Cir.1985). This rule "applies with no less force to a Sherman Act claim...."* McLain v. Real Estate Board of New Orleans, Inc., *444 U.S. 232, 246, 100 S.Ct. 502, 511, 62 L.Ed.2d 441 (1980). The court is required to read the complaint with great generosity on a motion to dismiss.* See Yoder v. Orthomolecular Nutrition Institute, *751 F.2d 555, 558 (2d Cir.1985). When determining the sufficiency of a plaintiff's claims for Rule 12(b)(6) purposes, the court may only consider the factual allegations in the complaint, documents attached to the complaint, matters to which judicial notice can be taken, or documents in plaintiff's possession or of which plaintiff had knowledge and relied on in bringing suit.*[5] Brass v. American Film Technologies, Inc., *987 F.2d 142, 150 (2d Cir.1993) (citing* Cortec Industries, Inc. v. Sum Holding L.P., *949 F.2d 42, 47–48 (2d Cir.1991), cert. denied, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992)).*

Defendants argue that Plaintiffs' Second Amended Complaint should be dismissed on statute of limitations grounds and/or for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6).

### 1. *Statute of Limitations*

Section 4B of the Clayton Act provides for a four year statute of limitations in private antitrust actions measured from the time the cause of action accrues. 15 U.S.C. § 15b. An antitrust cause of action accrues "when a defendant commits an act that injures a plaintiff's business." *Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 338, 91 S.Ct. 795, 806, 28 L.Ed.2d 77, *reh'g denied,* 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971). Continuing antitrust conduct resulting in a continued invasion of a plaintiff's rights may give rise to continually accruing causes of action, however, a newly accruing claim for damages must be based on some injurious act actually occurring during the limitations period, not merely additional consequences of some pre-limitation action.[6] *Poster Exchange, Inc. v. National Screen Service Corp.,* 517 F.2d 117, 128 (5th Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 784, 46 L.Ed.2d 643 (1976); *Delaware and Hudson Railway Company v. Consolidated Rail Corp.,* 654 F.Supp. 1195, 1204 (N.D.N.Y. 1987). *See, e.g., Hanover Shoe, Inc. v. United Shoe Machinery Corp.,* 392 U.S. 481, 496 n. 12, 88 S.Ct. 2224, 2233 n. 12, 20 L.Ed.2d 1231 (1968) (an illegal policy first affected the plaintiff in 1912, but a suit instituted in 1955 was not barred by the statute of limitations because the policy was "conduct which constituted a continuing violation of the Sherman Act ... [and] inflicted continuing and accumulating harm on [the plaintiff]."); *Poster Exchange, supra,* at 126–27 ("Where the violation is final at its impact, for example, where the plaintiff's business is immediately and permanently destroyed, or where an actionable wrong is by its nature permanent at initiation without further acts, then the acts causing damage are unrepeated, and suit must be brought within the limitations period

---

5. The court may not consider the Report and Recommendation filed on January 16, 1996 as the Report and Recommendation relied on materials outside the pleadings. Additionally, the court may not take judicial notice of the Report and Recommendation, as requested by Defendants, as judicial notice may only be taken of facts not subject to reasonable dispute which are generally known within the territorial jurisdiction of the trial court or are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. Fed.R.Evid. 201(b).

6. "Under *Zenith,* where defendants are alleged to have committed acts injurious to a plaintiff pursuant to an unlawful conspiracy, and where defendants committed some such acts more than four years before plaintiff commenced suit, and other acts less than four years before plaintiff commenced suit, the plaintiff is allowed to recover damages resulting only from those acts committed less than four years before commencement of the suit." *Imperial Point Colonnades Condominium v. Mangurian,* 549 F.2d 1029, 1034 (5th Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 185, 54 L.Ed.2d 132 (1977).

and upon the initial act."). *See also Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 503, 66 L.Ed.2d 431 (1980) (completed act of discrimination); *United Air Lines v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (continuing effects of earlier discrimination). In other words, where all damages complained of necessarily result from a pre-limitations act by the defendants, the cause of action does not "continually accrue" into the limitations period. *Imperial Point Colonnades Condominium v. Mangurian,* 549 F.2d 1029, 1034–35 (5th Cir.), *cert. denied,* 434 U.S. 859, 98 S.Ct. 185, 54 L.Ed.2d 132 (1977).

The question presented in this case is whether the alleged continuing conspiracy interfering with Plaintiffs' ability to obtain jobs, raises and promotions in the field of emergency medicine is to be treated for statute of limitations purposes as a single act and invasion of Plaintiffs' rights, occurring with the closure of the practice track on June 30, 1988, or whether it may be viewed as a continuing series of acts upon which successive causes of action may accrue.

The parties do not dispute the fact that the practice track closed on June 30, 1988. However, Plaintiffs contend that their antitrust claims are not barred by the four year statute of limitations, as there have been actions by the Defendants subsequent to the closure of the practice track which constitute a continuing antitrust violation, not merely the continuing damage Plaintiffs incur from the original closure of the practice track on June 30, 1988. Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss based on Statute of Limitations Grounds, filed April 8, 1996, at pp. 3–26 ("Plaintiffs' Statute of Limitations Memorandum"). Defendants, however, assert that the statute of limitations began to run on June 30, 1988, and Plaintiffs have failed to allege any additional injury after that date. Reply Memorandum of the LeBoeuf Hospital Defendants in Support of the Statute of Limitations Motion, filed April 26, 1996, at p. 3 ("Defendants' Statute of Limitations Reply Memorandum").

In the Second Amended Complaint, Plaintiffs allege several anticompetitive acts of the Defendants, occurring after June 30, 1988, in support of their continuing antitrust conspiracy theory, including (1) ABEM's continuing refusal to reopen the practice track as late as March of 1992, ¶¶ 83–86, (2) ABEM's reopening of the practice track for Diplomates of the American Board of Internal Medicine from January of 1990 through June of 1992, ¶¶ 11, 71–77, (3) ABEM's denials of Plaintiffs' applications to take the certification examination and Defendants' continuing refusal to reconsider such denials, ¶ 105, (4) the hospital Defendants' denials of positions, promotions, and salary increases to plaintiffs as the result of lack of ABEM eligibility or certification, ¶¶ 34, 104–110, (5) ABEM's promulgation of arbitrary and unreasonable guidelines for use in evaluation under the special application track and rejection of Plaintiffs' applications despite their qualifications, ¶¶ 34, 63–70, and (6) all of the Defendants' promotion of ABEM certified emergency physicians as having the highest training standards, thereby misleading the public into believing that the ABEM certified physicians are better qualified than the Plaintiffs. ¶¶ 78–82.

In determining whether the acts which occurred subsequent to the closure of the practice track constituted injuries to Plaintiffs, the court must determine whether each overt act alleged in the Second Amended Complaint is a "new and independent act that is not merely a reaffirmation of a previous act" and "inflicts new and accumulating injury on the plaintiff." *Pace Industries, Inc. v. Three Phoenix Co.,* 813 F.2d 234, 238 (9th Cir.1987). ABEM's continuing refusal to reopen the practice-track to the Plaintiffs and the denials of applications of emergency physicians meeting the practice track criteria could be considered extensions or reaffirmations of the original injury, rather than new and independent acts causing accumulating injury to the Plaintiffs. *See, e.g., Pace, supra,* at 237–39 (finding a permanent and final decision "made outside the limitations period does not constitute a continuing violation even if the injury continues within the statut[ory] period"); *Midwestern Waffles, Inc. v. Waffle House, Inc.,* 734 F.2d 705, 714–15 (11th Cir.1984) (if plaintiff's requests for a

franchise territory in another state, made subsequent to the statute of limitations period, were futile and plaintiffs had reason to know they were futile, no new cause of action accrues); *Vitale v. Marlborough Gallery,* 1994 WL 654494 (S.D.N.Y.1994) (initial refusal to deal was final, therefore, defendants' continued failure to advise and continued requirement of authentication of paintings did not give rise to a new cause of action).

When ABEM closed the practice track, this decision was by its nature permanent at initiation without further action, thus, subsequent applications and appeals of application denials do not constitute new acts which inflict continuing and accumulating harm on the Plaintiffs. *Poster Exchange, supra,* at 126–27. Therefore, as Plaintiffs' practice-track option was immediately and permanently eliminated on June 30, 1988, Plaintiffs' allegations of ABEM's continuing refusal to reopen the practice track, and ABEM's denials of Plaintiffs' applications in the Second Amended Complaint are insufficient to support a finding of continuing antitrust conspiracy.

▆▆▆ However, Plaintiffs are entitled to maintain suit if they can demonstrate that "there had been a specific act or word of refusal [by defendants to deal with plaintiff] during the limitations period." *Poster Exchange, supra,* at 129. *See also Imperial Point, supra,* at 1035–38 (plaintiffs purchased their condominium unit and became parties to a recreational lease more than four years before commencing suit, however, the court held that defendant's quarterly collection of rent and increases in rent constituted acts which injured plaintiffs and that were committed within four years of filing suit). Plaintiffs in this case have asserted several additional acts by the hospital Defendants which they allege occurred during the limitations period;[7] including demotions or losses of responsibility, the denial of jobs, raises and promotions, receipt of less remuneration than ABEM certified physicians, and ABEM's act of temporarily reopening of the practice-track for members of the American Board of Internal Medicine.[8] Second Amended Complaint at ¶¶ 11, 34, 63–70, 71–77, 78–82, 104–110. Accepting all of Plaintiffs' allegations as true and drawing all reasonable inferences in favor of the Plaintiffs, each of these acts caused new and accumulating injury to the Plaintiffs subsequent to the limitations period and separate from the injuries caused by the original closure of the practice-track. As this continuing antitrust conduct results in a continued invasion of a plaintiff's rights, these acts give rise to continually accruing rights of action. Thus, as Plaintiffs have suffered injurious acts which occurred during the limitations period, the Plaintiffs have made sufficient allegations in their Second Amended Complaint to demonstrate that acts of Defendants during the limitations period

---

7. Although it may be argued that none of the acts alleged would have occurred but for the initial alleged violation by ABEM, the closure of the practice-track, and the subsequent acts by the Defendants are factually and legally related to the closure of the practice-track, these acts are not the result of ABEM's closure of the practice-track.

8. Injurious conduct in furtherance of a conspiracy committed within the limitations period ensures a timely cause of action against all members of the conspiracy. *United States v. Fletcher,* 928 F.2d 495, 498 (2d Cir.), *cert. denied,* 502 U.S. 815, 112 S.Ct. 67, 116 L.Ed.2d 41 (1991) (limitations period begins to run after the last overt act in furtherance of the main goals of the conspiracy); *Bankers Trust v. Feldesman,* 676 F.Supp. 496, 504 (S.D.N.Y.1987), *reversed on other grounds sub nom. Bankers Trust v. Rhoades,* 859 F.2d 1096 (2d Cir.1988), *cert. denied sub nom. Soifer v. Bankers Trust Co.,* 490 U.S. 1007, 109 S.Ct. 1642, 104 L.Ed.2d 158 (1989) ("each time a member of a conspiracy commits an overt act in furtherance of the [continuing civil] conspiracy, a cause of action accrues against all of the persons who are then members of the conspiracy for the damages caused by that act"); *Driscoll v. City of New York,* 650 F.Supp. 1522 (S.D.N.Y.1987) (four year statute of limitations applicable to antitrust actions was held to run from each injury plaintiff sustained as a result of the acts of the conspirators).

While the Second Amended Complaint is not precise as to the exact dates upon which each hospital Defendant and CORD joined the conspiracy, it alleges that each Defendant entered the conspiracy during the limitations period and has continuously engaged in conspiratorial acts during the statute of limitations period. Accordingly, Plaintiffs have sufficiently alleged that acts in furtherance of the conspiracy continued into the statute of limitations period, and therefore, the Second Amended Complaint cannot be dismissed.

have foreclosed or interfered with their access to the employment market for emergency medicine physicians.

Accordingly, the court finds that Plaintiffs have made sufficient allegations in their Second Amended Complaint to overcome Defendants' statute of limitations defense, and the Defendants' motions to dismiss on statute of limitations grounds should be DENIED.

### 2. Failure to State a Claim Upon Which Relief May Be Granted

Plaintiffs allege causes of action under both Sections 1 and 2 of the Sherman Antitrust Act. Specifically, Plaintiffs claim that ABEM arbitrarily closed the practice-track mode of eligibility to take the emergency medicine certification examination, precluding qualified and experienced emergency physicians from becoming Diplomates of ABEM and competing with other Diplomates in the emergency medicine market. The teaching hospital Defendants and co-conspirators are engaged in the administration and operation of post-graduate residency training programs in emergency medicine. Plaintiffs contend that, as the result of Defendants' unlawful conspiracies and schemes, the only way to qualify for the ABEM certification examination is to complete an accredited emergency medicine residency training program offered by one of the teaching hospital Defendants. Plaintiffs allege that many of the hospitals and other medical facilities throughout the United States require ABEM certification or eligibility as a prerequisite for positions in the field of emergency medicine, or for advancement in those positions, and that the influence, power and prestige of ABEM and its co-conspirators gives ABEM certified or eligible physicians a significant competitive advantage when seeking positions in emergency medicine, promotions or salary increases.

Plaintiffs also assert that ABEM's actions constitute a monopoly, an attempt to monopolize, or a conspiracy to monopolize in violation of Section 2 of the Sherman Act, with specific intent to increase prices and reduce competition in the emergency medicine market, causing Plaintiffs to suffer business, professional and other economic injuries.

In filing this action, Plaintiffs seek permission to take the certification examination administered by ABEM when they meet the practice-track criteria, and for those who pass the examination, to become Diplomates of emergency medicine. Plaintiffs request monetary damages for those physicians who would have been eligible to sit for the ABEM certification examination under the practice-track mode of eligibility and were precluded from doing so as the result of Defendants' alleged conspiracy, and a permanent injunction to prevent each of the Defendants from continuing, maintaining of renewing their conspiracy to restrain competition.

As discussed, a complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt" that a plaintiff can prove no set of facts which would entitle him to relief. *Conley, supra,* at 45–46, 78 S.Ct. at 101–02. This standard is even more stringent when evaluating antitrust claims, where the proof often is in the hands of the alleged conspirators, and dismissals prior to giving the plaintiff ample opportunity for merit-based discovery should be granted sparingly. *Hospital Building Company v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976) (citing *Poller v. Columbia Broadcasting System, Inc.,* 368 U.S. 464, 473, 82 S.Ct. 486, 491, 7 L.Ed.2d 458 (1962)).

The test for the sufficiency of a complaint in an antitrust action is, as noted, less stringent than for claims of fraud under Rule 9(b), and is guided by the "short, plain and concise" language in Rule 8. *Michaels Building Co. v. Ameritrust Co.,* 848 F.2d 674, 681 (6th Cir.1988); *George C. Frey Ready–Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp.,* 554 F.2d 551, 554 (2d Cir.1977) ("a short plain statement of a claim for relief which gives notice to the opposing party is all that is necessary in antitrust cases"); *Newburger, Loeb & Co., Inc. v. Gross,* 365 F.Supp. 1364, 1367–68 (S.D.N.Y.1973) ("skeletal" allegations sufficient to withstand a motion to dismiss). In fact, because of the conspiratorial nature of certain antitrust claims, "dismissals prior to giving the plaintiff ample opportunity for discovery should

be granted very sparingly." *Hospital Building Co., supra,* at 746, 96 S.Ct. at 1853.

### a. *Sherman Act Section 1 Claims*

 Section 1 of the Sherman Antitrust Act provides that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce ... is declared to be illegal...." 15 U.S.C. § 1. To demonstrate a violation of Section 1, a plaintiff must establish a combination or some form of concerted action between at least two legally distinct economic entities which constitutes an unreasonable restraint on interstate trade or commerce.[9] *Standard Oil of New Jersey v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911); *Estate Construction Co. v. Miller & Smith Holding Co., Inc.,* 14 F.3d 213, 220 (4th Cir.1994); *Capital Imaging Associates, P.C. v. Mohawk Valley Medical Associates, Inc.,* 996 F.2d 537, 542 (2d Cir.), *cert. denied,* 510 U.S. 947, 114 S.Ct. 388, 126 L.Ed.2d 337 (1993).

 When presented with a motion to dismiss a Sherman Act Section 1 or 2 complaint pursuant to Fed.R.Civ.P. 12(b)(6), the court must determine whether "allegations covering all the elements that comprise the theory for relief" have been stated as required. *United States v. Employing Plasterers Association,* 347 U.S. 186, 189, 74 S.Ct. 452, 454, 98 L.Ed. 618 (1954); *Municipal Utilities Board of Albertville v. Alabama Power Co.,* 934 F.2d 1493, 1501 (11th Cir. 1991) ("A plaintiff must plead sufficient facts so that each element of the alleged antitrust violation can be identified."). Moreover, the allegations must be stated in terms that are neither vague nor conclusory. *Estate Construction, supra,* at 220–21. Conclusory allegations which "merely recite the litany of antitrust will not suffice;" the court has the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed. *Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459

U.S. 519, 528 n. 17, 103 S.Ct. 897, 903 n. 17, 74 L.Ed.2d 723 (1983); *Estate Construction, supra,* at 221 ("A mere allegation that 'the defendants violated the antitrust laws as to a particular plaintiff and commodity' is insufficient to survive a Rule 12(b)(6) motion.") (quoting *Klebanow v. New York Produce Exchange,* 344 F.2d 294, 299 (2d Cir.1965)); *Furlong v. Long Island College Hospital,* 710 F.2d 922, 927 (2d Cir.1983) (*Conley* "does not permit conclusory statements to substitute for minimally sufficient factual allegations").

 For purposes of this motion, the court will assume that Plaintiffs can prove the facts they allege in their Second Amended Complaint, but will not assume that the Plaintiffs can prove facts they have not alleged or the violation of antitrust laws in ways that have not been alleged. *Estate Construction, supra,* at 221 (citing *Associated General Contractors, supra,* at 526, 103 S.Ct. at 902). Although "antitrust law limits the range of permissible inferences from ambiguous evidence," *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio,* 475 U.S. 574, 588, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Apex Oil Co. v. DiMauro,* 822 F.2d 246, 252 (2d Cir.1987), the evidence of conspiracy "must be viewed as a whole to determine the reasonableness of [the] inferences drawn." *International Distribution Centers, Inc. v. Walsh Trucking,* 812 F.2d 786, 794 (2d Cir.1987). After merit-based discovery is completed, the Plaintiffs may supplement the allegations of their Second Amended Complaint by arguing additional facts obtained through the discovery process to withstand summary judgment motions.

### i. *Contract, Combination or Conspiracy*

 In order to state a claim of concerted action for Section 1 purposes, a plaintiff must assert facts demonstrating that the alleged competitors entered into an agreement which was designed to further their own

---

**9.** It is sufficiently alleged that ABEM, CORD and the hospital Defendants are engaged in and affect interstate commerce through their activities. Second Amended Complaint at ¶¶ 36, 87. Plaintiffs state that the hospital Defendants regularly treat patients from all over the United States, purchase machines, goods, and other equipment and supplies from suppliers located throughout the United States, and receive revenues from patients and insurers throughout the United States. Second Amended Complaint at ¶ 36.

economic interests while at the same time excluding other threatening competitors.

■ Plaintiffs contend that ABEM, an organization which prepares and administers board examinations for certification in emergency medicine, CORD, an association of directors of emergency medicine residency programs which influences and affects activities in all areas of emergency medicine, and the hospital Defendants, teaching hospitals and sponsoring institutions for emergency medicine residency training programs which each have or have had at least one representative who participated, through leadership activities in ABEM, CORD, or a non-party co-conspirator organization, in a conspiracy with ABEM and the other defendants to close and maintain closure of the practice-track, and deny Plaintiffs positions in emergency medicine because of the plaintiffs' lack of ABEM eligibility or certification.[10] Second Amended Complaint at ¶¶ 6, 32, 34, 38–43, 45, 49–53, 56–57. Plaintiffs assert that these actions by ABEM, CORD, the hospital Defendants and the non-party co-conspirators constitute a continuing conspiracy to prevent and reduce competition in the market for emergency medicine physicians in restraint of trade. Second Amended Complaint at ¶¶ 112–13. Plaintiffs also state that Defendants have conspired to reopen the practice track for some Diplomates of the American Board of Internal Medicine, to the exclusion of Plaintiffs, despite the fact that the internists may not be as well trained in emergency medicine as Plaintiffs. Second Amended Complaint at ¶¶ 69, 71–74.

The objects and purposes of the alleged conspiracy include the prevention of plaintiffs from taking the ABEM certification examination, the restraint of competition with ABEM eligible and certified physicians, the artificial inflation and maintenance of increased remuneration of ABEM Diplomates, as compared

to plaintiffs, who are equally or more qualified than the ABEM eligible or certified physicians, but are excluded from the certification process, the reduction of output and increase in prices for emergency care, and injuries to plaintiffs' business, professional and economic interests. Second Amended Complaint at ¶¶ 57, 66–71, 74, 78–85, 103–105, 108–110, 114–121.

Further, the alleged conspiracy to maintain closure of the practice-track despite the needs of the public,[11] the medical profession and the specialty of emergency medicine, has compounded the manpower crisis in the field of emergency medicine, and the crisis is perpetuated and enhanced by Defendants discouraging physicians from entering emergency medicine and causing injury to many physicians without ABEM certification. Second Amended Complaint at ¶¶ 57, 60, 66–71, 74, 78–85, 88–90, 94, 97–98, 100–102, 103–105, 108–10, 114–21.

The results of the alleged conspiracy include sustaining artificially high prices for the services of ABEM eligible and certified physicians, reduction of competition against the teaching hospital Defendants' emergency medicine residency programs, ensuring a supply of residents, low-priced labor, sustaining artificially high and inflated Medicare, Medicaid, workers compensation and insurance reimbursement rates, and by generating greater funding for established emergency medicine residency training programs. Second Amended Complaint at ¶¶ 57, 88–90, 92, 94–96, 102–110.

Although Plaintiffs' allegations do not specify who was present at the meetings during which the conspiracy was formed, where or when these meetings took place, Plaintiffs do state that key members of each hospital Defendants' medical faculty and staff, Second Amended Complaint at Exhibits C & D, were involved with several emer-

---

**10.** Although Defendants assert that Plaintiffs do not sufficiently plead that the hospitals conspired through the physicians acting as representatives or agents of the hospital Defendants, requiring Plaintiffs to plead this information more specifically would impose a heightened pleading standard notwithstanding the fact that only a "short, plain and concise" statement giving notice to the Defendants is all that is necessary in an antitrust

case. *Michaels Building, supra,* at 681; *George C. Frey Ready–Mixed Concrete, supra,* at 554; *Newburger, supra,* at 1367–68.

**11.** Plaintiffs also assert that the Defendants have misled the public as to the qualifications of emergency medicine physicians. Second Amended Complaint at ¶¶ 79–82.

gency medicine organizations, including ABEM, CORD, and the non-party co-conspirator organizations, and that the conspiracy to close and maintain closure of the practice-track occurred as the result of the meetings of these organizations. Moreover, the Second Amended Complaint asserts that each of the hospital Defendants were directly involved in co-conspiratorial acts, including the independent adoption of discriminatory and exclusionary credentialling policies which require ABEM certification or eligibility, denial of positions, promotions, remuneration, appointments and salary increases as the result of Plaintiffs' lack of ABEM certification or eligibility, and the hospitals have allegedly forced Plaintiffs to accept demotions, decreased responsibilities, decreased salaries and undesirable work shifts as the result of lack of ABEM certification or eligibility. Second Amended Complaint at ¶¶ 34, 82, 104, 106–10. These allegations are sufficient, at this stage of the litigation, to show Section 1 concerted action.

### ii. *Unreasonable Restraint of Trade*

■ Having sufficiently asserted concerted action, Plaintiffs must next allege facts which demonstrate an unreasonable restraint on the market for emergency medicine physicians. " 'A restraint is unreasonable if it substantially harms competition in the relevant market to the extent that the harmful effects substantially outweigh any beneficial effects.' " *Mastercard International Inc. v. Dean Witter*, 1993 WL 338213, *3 (S.D.N.Y. 1993) (quoting *SCFC ILC Inc. v. Visa U.S.A. Inc.*, 819 F.Supp. 956, 968 (D.Utah 1993)).

■ Plaintiffs contend that the Defendants' conspiracy harms competition as the Plaintiffs, and other emergency physicians who are not ABEM certified or eligible, with qualifications, training and experience equal or superior to that of ABEM certified or

eligible physicians, can not compete in the United States market for ABEM certified or eligible physicians.[12] Second Amended Complaint at ¶¶ 8–9, 13–14, 82, 86, 88–90, 91–92, 103–110.

■ Further, the Defendants are alleged to possess market power in the market for ABEM certified and eligible physicians, and their refusal to permit Plaintiffs to take the ABEM certification examination, or practice without ABEM certification, has injured competition. Second Amended Complaint at ¶¶ 92–102. Market power is "the ability to raise prices above those that would be charged in a competitive market." *NCAA v. Board of Regents of the University of Oklahoma*, 468 U.S. 85, 109 n. 38, 104 S.Ct. 2948, 2964 n. 38, 82 L.Ed.2d 70 (1984) (citations omitted). In order to sufficiently allege market power, a plaintiff must allege an ability to control prices. *Mastercard International, supra*, at *4 (citing *SCFC ILC, supra*, at 969).

Plaintiffs sufficiently allege facts which show that ABEM, CORD, the hospital Defendants, and the non-party co-conspirators' exclusion of Plaintiffs from eligibility for ABEM certification injures competition by raising prices and/or lowering output in the relevant market. Second Amended Complaint at ¶¶ 16, 91–96, 97–102, 104.

■ Accordingly, Plaintiffs' complaint sufficiently alleges facts which show that the Defendants' exclusion injures competition by raising prices in the market for ABEM certified and eligible physicians. Thus, the court finds that Plaintiffs have sufficiently alleged facts which, if proven, show that ABEM, CORD, the hospital Defendants and the non-party co-conspirators may be participating in a collective fashion to unreasonably impede competition in the field of emergency medicine.[13]

---

12. As an agreement to restrain trade need not inhibit all competition in the relevant market to fall under scrutiny within Section 1 of the Sherman Act, *see Associated Press v. United States*, 326 U.S. 1, 17, 65 S.Ct. 1416, 1423, 89 L.Ed. 2013 (1945), thus, although Plaintiffs may be able to compete for positions in emergency medicine in some hospitals, they may nevertheless interpose a Section 1 claim. *Id.*

13. Denial of access to professional association memberships which confer economic advantage for members represents a prohibited restraint of trade for Sherman Act purposes unless found to be reasonable. *See Kreuzer v. American Academy of Periodontology*, 735 F.2d 1479, 1490 (D.C.Cir. 1984). Therefore, after discovery and trial, a jury conceivably may conclude that ABEM's prerequisites for Diplomate status and the Defen-

### b. *Sherman Act Section 2 Claims*

The Sherman Act also prohibits "monopoliz[ing] or attempt[ing] to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States...." 15 U.S.C. § 2. Plaintiffs assert that ABEM violated Section 2 of the Sherman Act by monopolizing or attempting to monopolize the United States market for ABEM certified physicians, and that the Defendants and non-party co-conspirators violated Section 2 of the Sherman Act by conspiring to monopolize the relevant market.

### i. *Monopolization*

■■■■■ The offense of monopolization under Section 2 of the Sherman Act consists of two elements, the demonstration of monopoly power in the relevant market and the wilful acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident. *Volvo North America Corp. v. Men's International Professional Tennis Council,* 857 F.2d 55, 73 (2d Cir.1988). In this case, Plaintiffs have stated that "ABEM possesses monopoly power over the market for ABEM certified and ABEM eligible emergency physicians, and [that ABEM's] exclusionary practices have been and are used to acquire, abuse and preserve such power." Second Amended Complaint at ¶ 129.

Further, Paragraph 45 of the Second Amended Complaint alleges that ABEM is the only emergency medicine specialty board recognized by the American Board of Medical Specialties and the American Medical Association, and as the only recognized specialty board, ABEM sets the standards for board certification, and has substantial impact and influence on the specialty of emergency medicine and the emergency medicine medical community in the United States. Second Amended Complaint at ¶ 45. Additionally, ABEM, the American Medical Association, and the American College of Emergency Physicians, a non-defendant co-conspirator, are the sole sponsors of the Residency Review Committee for Emergency Medicine ("RRC–EM"), which evaluates and accredits emergency medicine residency programs at the defendant teaching hospitals.[14] ¶ 46. Thus, by and through its sponsorship of and affiliation with the RRC–EM, ABEM exerts substantial impact and influence on the specialty of emergency medicine, including control and development of emergency medicine residency programs. ¶ 46. Moreover, the Second Amended Complaint alleges that ABEM has wilfully maintained its monopoly power by closing and maintaining closure of the practice-track, denying special applications for admission to the certification examination, reopening the practice-track for a limited number of applicants from the American Board of Internal Medicine, sustaining artificially high and inflated prices for the services of ABEM certified or eligible physicians, sponsoring the RRC–EM, maintaining interrelationships between ABEM, CORD and other non-party co-conspirator organizations, limiting disclosure regarding the closure of the practice-track, misleading the public by declaring that ABEM certified and eligible physicians are the most highly qualified in the field, and rejection of all alternative pathways to ABEM certification. Second Amended Complaint at ¶¶ 8, 10–11, 14, 46–47, 56, 58, 62–65, 67–68, 71–75, 78–82, 83. Thus, Plaintiffs allegations in the Second Amended Complaint are sufficient to withstand a motion to dismiss with respect to the claim of monopolization by ABEM.

### ii. *Attempted Monopolization*

■■■■ The offense of attempted monopolization under Section 2 of the Sherman Act consists of three elements, anticompetitive or exclusionary conduct entered into with the specific intent to monopolize and a dangerous probability that the attempt will succeed.

---

dants' initial closure and subsequent refusal to reopen the practice-track mode of eligibility through the alleged conspiracy are anticompetitive and in violation of the Sherman Act.

**14.** In order for a physician to become ABEM eligible, that physician must complete an accredited emergency medicine residency training program. Second Amended Complaint at ¶¶ 4, 6–7, 49–51, 58–62.

*Volvo North America, supra,* at 73–74. Proof of the first element of an attempted monopolization claim, anticompetitive or exclusionary conduct, may be used to infer the second element, specific intent to monopolize; and when coupled with proof of monopoly power, evidence of anticompetitive conduct may demonstrate a dangerous probability of success. *Volvo North America, supra,* at 74 (citing *Northeastern Telephone Co. v. American Telephone & Telegraph Co.,* 651 F.2d 76, 85 (2d Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1438, 71 L.Ed.2d 654 (1982)).

 In this case, the Second Amended Complaint alleges the first two elements of an attempted monopolization claim, exclusionary conduct and specific intent to increase prices and reduce competition. *See* Discussion Section 2(b)(i), *supra.* Additionally, as the complaint alleges both exclusionary conduct and the existence of monopoly power, the third element, a dangerous probability of success, may be inferred. *Volvo North America, supra,* at 74.

Accordingly, Plaintiffs have stated a claim for attempt to monopolize under Section 2 of the Sherman Act.

### iii. *Conspiracy to Monopolize*

In order to demonstrate a conspiracy to monopolize, the Plaintiffs must sufficiently allege concerted conduct entered into with the specific intent to achieve an unlawful monopoly and the commission of an overt act in furtherance of the conspiracy. *Volvo North America, supra,* at 74. For reasons already discussed, the court finds that the complaint alleges concerted action and specific intent to monopolize. Moreover, the various practices to which Plaintiffs object, including the closure and maintenance of the closure of the practice track, the denial of alternative paths to ABEM certification, the denial of special applications, and the limited reopening of the practice-track for members of the American Board of Internal Medicine, could qualify as overt acts in furtherance of the conspiracy. Further, many of the officers and directors of ABEM were at one time, or are presently, affiliated with other co-conspirator institutions, including the hospital Defendants, or organizations in the specialty of emergency medicine. ¶ 47. These interrelationships further enable ABEM and Diplomates of ABEM to control and influence the specialty of emergency medicine throughout the United States and to perpetrate and perpetuate anticompetitive conduct through their alleged conspiracies. ¶ 47. Accordingly, Plaintiffs have stated a claim for conspiracy to monopolize.

### CONCLUSION

Based on the foregoing, the Defendants' motions to dismiss the Second Amended Complaint on statute of limitations grounds and for failure to state a claim upon which relief may be granted should be DENIED.

July 15, 1996.